United States District Court
Southern District of Texas
**ENTERED**
December 17, 2020
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| DANA DILL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-19-4755 |
| | § | |
| FEDERAL HOME LOAN MORTGAGE | § | |
| CORPORATION, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Dana Dill refinanced her home with a home equity loan from the Federal Home Loan Mortgage Corporation ("Freddie Mac"). LoanDepot.com LLC is her current loan servicer. Dill sued Freddie Mac and LoanDepot, alleging that they violated the Texas Constitution during the closing process for her loan. LoanDepot moved for judgment on the pleadings, and Dill moved for summary judgment. The issue is where Dill closed on the loan.

The Texas Constitution requires a borrower to sign closing home-loan documents "only at the office of the lender, an attorney at law, or a title company." TEX. CONST. art. XVI, § 50(a)(6)(N). Dill alleges that she signed her closing documents at her kitchen table, not at one of the required locations. Dill submitted her own affidavit and documents from the notary for her loan. Freddie Mac and LoanDepot submitted a sworn affidavit, also signed by Dill and bearing the closing date, stating that she signed the closing documents at one of the locations required by the Texas Constitution, but not specifying the location.

Based on the pleadings, the motions and responses, the record, and the applicable law, the court denies both parties' motions. Genuine factual disputes material to the location issue preclude the court from granting either motion. The reasons are explained in detail below.

## I.    Background

Dill's December 2016 home equity loan documents included a Texas Home Equity Note, a Texas Home Equity Security Instrument, and a Texas Home Equity Affidavit.  (Docket Entry Nos. 32-4, 32-5).  The Security Instrument states that the loan "conform[s] strictly to provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI, of the Texas Constitution."  (Docket Entry No.  32-5 at 23).

In June 2019, Dill sent a notice to cure constitutional violations to the lender, Freddie Mac, and the loan servicer, JP Morgan Chase Bank.  (Docket Entry Nos. 32-6, 32-7).  In her notice, she alleged a violation of § 50(a)(6)(N), Article XVI, of the Texas Constitution, because she did not close on the loan in Chase's office, Freddie Mac's office, "the title company's office, or an attorney's office."  (Docket Entry No. 32-6 at 4).  Chase responded a week later, denying that it violated the Texas Constitution.  (Docket Entry No. 32-8 at 2).

In October 2019, Dill sued Freddie Mac and Chase in state court, asserting state-law claims for breach of contract and money had and received.  (Docket Entry No. 1-1).  Freddie Mac and Chase timely removed.  (Docket Entry No. 1).  In April 2020, Chase informed Dill that LoanDepot would be the new servicer for her loan.  (Docket Entry No. 32-9).  In May 2020, Dill amended her complaint, removing Chase and adding LoanDepot as a defendant.  (Docket Entry No. 19).  Dill's first amended complaint asserted breach of contract against Freddie Mac and LoanDepot for violating Section 50(a)(6)(N), Article XVI, of the Texas Constitution, and for failing to cure that violation.  (*Id.* at ¶¶ 15–18).

In August 2020, Freddie Mac and LoanDepot moved for judgment on the pleadings, alleging that Dill had signed a Home Equity Affidavit on December 26, 2016, stating that she signed the loan documents at Chase's office or Freddie Mac's office, the title company's office,

or an attorney's office.  (Docket Entry No. 27 at 7–8).  The Home Equity Certificate, signed by a LoanDepot representative, states that the loan documents were signed "at either the office of the Originating Lender, an attorney at law, or a title company."  (Docket Entry No. 33-2).  Freddie Mac and LoanDepot also argued that Dill lacked standing.  (*Id.* at 13).

In October 2020, Dill moved for summary judgment.  She submitted her own affidavit, a log from the notary who witnessed Dill sign the loan documents, and an affidavit from the notary. (Docket Entry Nos. 32-10, 32-11, 32-12).  Dill's affidavit stated that she signed the loan documents "at the kitchen table of [her] . . . home."  (Docket Entry No. 32-12 at 2).  The notary log states that the closing location was Dill's home.  (Docket Entry No. 32-10 at 3).  The notary's affidavit states that "the home equity loan refinance of Dana Dill . . . too[k] place at Dill's home."  (Docket Entry No. 32-11 at 2).  LoanDepot opposed Dill's summary judgment motion, submitting the Home Equity Affidavit and a Home Equity Certificate.

Each issue is analyzed below.

## II.     The Legal Standards

### A.     Judgment on the Pleadings

"A motion brought pursuant to Federal Rule of Civil Procedure 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."  *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002).  The Rule 12(c) standard is the same as that under Rule 12(b)(6).  *Gentilello v. Rege*, 627 F.3d 540, 543–44 (5th Cir. 2010).  Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court confirmed that Rule

12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570*; see also Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008).  The Supreme Court explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 677.

When deciding a motion for judgment on the pleadings, the court considers the pleadings and "[d]ocuments that a defendant attaches to a motion to dismiss," which "are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."  *See, e.g.*, *Brittan Commc'ns Int' Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 904 (5th Cir. 2002); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 1357 (3d ed. 2020) ("[M]atters incorporated by reference or integral to the claim [and] items appearing in the record of the case . . . may be considered by the district judge without converting the [Rule 12(b)(6)] motion into one for summary judgment").  A court's consideration of the attached documents is appropriate because "the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated."  *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).  Because the standards for Rule 12(c) and Rule 12(b)(6) are the same, a court may consider the same kinds of documents in a Rule 12(c) motion that it could consider in a Rule 12(b)(6) motion.

B.    **Summary Judgment**

"Summary judgment is appropriate only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 309 (5th Cir. 2018) (per curiam) (quotation marks omitted); Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists if a reasonable jury could enter a verdict for the non-moving party." *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 358 (5th Cir. 2020).   The moving party "bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact," *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (citation omitted), and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 301–02 (5th Cir. 2020) (citation and quotation marks omitted). While the party moving for summary judgment must demonstrate the absence of a genuine and material factual dispute, it does not need to negate the elements of the nonmovant's case. *Austin v. Kroger Tex., LP*, 864 F.3d 326, 335 (5th Cir. 2017) (per curiam) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n.16 (5th Cir. 1994)).   "[A] fact is 'material' if its resolution could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020) (citation and quotation marks omitted).   "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Pioneer Expl., LLC v. Steadfast Ins. Co.*, 767 F.3d 503 (5th Cir. 2014) (quotation marks omitted).

5

When the moving party has met its burden, "the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). "This burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation and quotation marks omitted). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018), *cert. denied sub. nom. City of Fort Worth, Tex. v. Darden*, 139 S. Ct. 69 (2018).

## C.   The Summary Judgment Record

The parties submitted the following summary judgment evidence:

- Texas Home Equity Note, (Docket Entry No. 32-4);

- Texas Home Equity Security Instrument, (Docket Entry No. 32-5);

- Dill's Notice to Cure dated June 20, 2019, (Docket Entry No. 32-6);

- Tracking Confirmation for Dill's Notice to Cure; (Docket Entry No. 32-7);

- Chase's Reply to Dill's Notice to Cure dated August 23, 2019, (Docket Entry No. 32-8);

- Chase Servicing Transfer Notice to LoanDepot dated April 16, 2020, (Docket Entry No. 32-9);

- Notary Log Entry for Witness Closing on December 26, 2016, (Docket Entry No. 32-10);

6

- Notary Affidavit, (Docket Entry No. 32-11);

- Texas Home Equity Affidavit, (Docket Entry No. 33-1); and

- Texas Home Equity Certificate, (Docket Entry No. 33-2).

## III.   Analysis

### A.   Threshold Procedural Issues

The court must first determine whether to convert LoanDepot's and Freddie Mac's motion for judgment on the pleadings into a motion for summary judgment, given the evidence the parties submitted with their summary judgment filings. The court may, but is not required, to treat the Rule 12(c) motion as one for summary judgment. *Isquith*, 847 F.2d at 194 n.3.

Freddie Mac and LoanDepot's Rule 12(c) motion covers the same issues as Dill's motion for summary judgment. Both motions address the location where Dill signed her loan documents. (Docket Entry No. 27 at 7–8; Docket Entry No. 32-3 at 8). The current record contains documents that were attached to or referenced in Dill's first amended complaint. The notary log was attached to Dill's first amended complaint. (Docket Entry No. 19-3). The Home Equity Affidavit and Home Equity Certificate are both part of Dill's closing documents, which form the basis of her complaint. (Docket Entry Nos. 33-1, 33-2). These documents address the key dispute in both motions—where Dill signed her loan documents—and are properly considered. These documents are "integral to [Dill's] claim" and the court may consider them without converting the 12(c) motion "into one for summary judgment." 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 1357 (3d ed. 2020). The fact that Dill has moved for summary judgment, and Freddie Mac and LoanDepot have replied, obviates the need to convert the Rule 12(c) motion to a motion under Rule 56.

**B.      The Merits of the Motions**

In Texas, "the homestead has always been protected from forced sale, not merely by statute as in most states, but by the Constitution." *Garofolo v. Ocwen Loan Servicing, LLC*, 497 S.W.3d 474, 477 (Tex. 2016) (quoting *Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 570 (Tex. 2013)).   Section 50(a)(6), Article XVI, of the Texas Constitution lists requirements that home equity loans must meet for a lender to have a valid lien on a borrower's homestead property.  *See* TEX. CONST. art. XVI, § 50(c); *see Garofolo*, 497 S.W.3d at 478 ("[Section 50(a)(6)] simply describes what a home-equity loan must look like if a lender wants the option to foreclose on a homestead upon borrower default.").   To state a claim under § 50(a)(6), the plaintiff must allege violations of § 50(a)(6) in conjunction with a cause of action, such as for breach of contract. *Garofolo*, 497 S.W.3d at 478.

Section 50(a)(6) requires a borrower to notify the lender of its noncompliance.  TEX. CONST. art. XVI, § 50(a)(6)(Q)(x).  That notice triggers the lender's opportunity to cure.  *Id.*  The lender has 60 days from the borrower's notice to cure.  *Id.*  If the lender does not, it "shall forfeit all principal and interest of the extension of credit."  *Id.*   This provision does not create a constitutional right to forfeiture, but the forfeiture can be enforced through a breach-of-contract claim.  *Garofolo*, 497 S.W.3d at 482.

Dill sent the defendants a notice of violation, alleging that her "loan was closed somewhere that wasn't" Freddie Mac's office, Chase's office, "a title company's office, or an attorney's office."  (Docket Entry No 32-6 at 4).  Dill alleges that the defendants did not cure within 60 days of receiving the notice. (Docket Entry No. 32-3 at 11; Docket Entry No. 32-8 at 2).  Dill argues that the defendants violated the Texas Constitution, § 50(a)(6)(N), which requires the closing of a home equity loan to occur "only at the office of the lender, an attorney at law, or a title company."

TEX. CONST. art. XVI, § 50(a)(6)(N).  This "provision was intended to prohibit the coercive closing of an equity loan at the home of the owner."  *Norwood*, 418 S.W.3d at 588.  Because the parties incorporated § 50(a)(6) into the Home Equity Security Instrument, Dill alleges that LoanDepot and Freddie Mac breached the contract.

LoanDepot and Freddie Mac argue that the Home Equity Affidavit that Dill signed is conclusive proof that the closing occurred at a lender's office, an attorney's office, or the title company's office.  Some courts have held that a borrower cannot later contradict a sworn statement signed at closing.  For example, in *Marino v. U.S. Bank Nat'l Ass'n*, the borrowers had signed an affidavit stating that they signed "the loan documents[] at the office of the Lender, an attorney at law, or a title company."  No. 4:18-CV-3802, 2020 WL 1650787, at *2 (S.D. Tex. Mar. 26, 2020).  When the lenders attempted to foreclose, the borrowers alleged that they did not actually sign the loan documents at any of those locations.  *Id.* at *3.  The court held that "a borrower's sworn statements at closing . . . are conclusive on issues of compliance with the Constitution's home equity provisions."  *Id.*  Other courts have reached the same conclusion.[1]

---

[1] *See Sivertson v. Citibank, N.A. as Tr. for Registered Holders of WAMU Asset-Backed Certificates WAMU Series 2007-HE2 Tr.*, No. 4:18-CV-169, 2019 WL 2519222, at *5 (E.D. Tex. Apr. 22, 2019) ("Plaintiff cannot defeat summary judgment based on his own self-serving affidavit, given the contrary evidence. Defendant's objection is sustained as to those statements by Plaintiff contained in [his] Affidavit which contradict the Home Equity Affidavit."); *Inge v. Bank of Am., N.A.*, No. 4:17-CV-705, 2018 WL 4224918, at *14 (E.D. Tex. July 19, 2018) ("The conclusory statements that Plaintiffs failed to receive the closing documents without any other factual support, and [one plaintiff's] unsupported attestation that his signature is not the signature on the Receipt produced by Defendant fail to present a genuine issue worthy of trial in the instant case."); *Summers v. PennyMac Corp.*, No. 3:12-CV-01235, 2012 WL 5944943, at *8 (N.D. Tex. Nov. 28, 2012) ("In light of the Plaintiffs' sworn testimony in the Home Equity Affidavit regarding the principal amount of credit in relation to the fair market value of their property, the court concludes that Plaintiffs' pleadings in this regard are contradicted by the Home Equity Affidavit. The Home Equity Affidavit is therefore controlling."); *Erickson v. Wells Fargo Bank, N.A.*, 2012 WL 4434740, *8 (W.D. Tex. Sept. 24, 2012) ("Although [the plaintiff] admits he received all documents signed on August 8 and signed an affidavit to that effect, he contends he did not receive any documents signed on August 9."); *Sierra v. Ocwen Loan Servicing, LLC*, 10-CV-4984, 2012 WL 527940, at *4–5 (S.D. Tex. Feb. 16, 2012) ("To contest this claim and the preceding claims, the plaintiffs proffer affidavits stating that they received no copies of documents until the loan closing. However, these self-serving and after-the-fact affidavits are

These courts have addressed situations in which the borrower's only proof of noncompliance was his or her own self-serving affidavit, usually signed years later, or allegations in the complaint.  But in a case with additional proof of noncompliance, one court denied a lender's motion for summary judgment.  In *Ford v. Bank of New York Mellon as Trustee for CWABS, Inc. Asset-Backed Certificates, Series 2007-2*, the borrower presented her own affidavit as well as "the affidavit of a separate individual who was present at the time and place the documents were closed specifically for the purpose of observing and notarizing the transaction."  No. 6-18-CV-00299, 2019 WL 7759097, at *3 (W.D. Tex. Nov. 15, 2019).  These "sworn statements of two separate individuals present at the time of closing create[d] a fact issue that preclude[d] summary judgement." *Id.*

This case is very similar to *Ford*.  Along with her motion for summary judgment, Dill submitted not only her own affidavit, but also a log from the notary who witnessed Dill sign the loan documents and an affidavit from the notary.  (Docket Entry Nos. 32-10, 32-11, 32-12).  The notary log, attached to Dill's first amended complaint, states that the closing took place at Dill's home.  (Docket Entry No. 32-10 at 3).  The notary's affidavit also states that "the home equity loan refinance of Dana Dill . . . too[k] place at Dill's home."  (Docket Entry No. 32-8 at 2).  While LoanDepot is correct that Dill signed the Home Equity Affidavit stating that the closing took place "at the office of the Lender, an attorney at law, or a title company," (Docket Entry Nos. 33-1, 33-2), the notary's affidavit and the notary log provide competent evidence that the loan documents

---

contradicted by numerous documents that they signed contemporaneously indicating that they did in fact receive copies of relevant documents during the loan process.").

were instead signed at Dill's home.[2]  This conflicting evidence precludes the court from granting either LoanDepot's and Freddie Mac's motion for judgment on the pleadings or Dill's motion for summary judgment.[3]

LoanDepot and Freddie Mac also argue Dill's claims should be dismissed because forfeiture is not an available remedy.  (Docket Entry No. 33 at 7).  The Texas Constitution outlines six corrective measures that a lender may take if the borrower provides notice that the lender has violated the Texas Constitution.  If the lender fails to take corrective action within 60 days from the notice, the lender "shall forfeit all principal and interest of the extension of credit."  TEX. CONST. art. XVI, § 50(a)(6)(Q)(x).  "[F]orfeiture is available only if one of the six specific constitutional corrective measures would actually correct the lender's failure to comply with its obligations under" the Texas Constitution.  *Garofolo*, 497 S.W.3d at 484.  "If performance of none of the corrective measures would actually correct the underlying deficiency, forfeiture is unavailable to remedy a lender's failure to comply with the loan obligation at issue."  *Id.* LoanDepot and Freddie Mac argue that none of the corrective measures set out in the Texas Constitution could correct the alleged defect in the closing location.  The court disagrees.

The Texas Constitution provides one catchall corrective measure for a lender notified of its failure to comply:

> If the failure to comply cannot be cured under Subparagraphs (x)(a)–(e) of this paragraph, curing the failure to comply by a refund or credit to the owner of $1,000 and offering the owner the right to refinance the extension of credit with the lender

---

[2] LoanDepot and Freddie Mac ask this court to strike Dill's affidavit under the sham affidavit rule and parol evidence rule.  (Docket Entry No. 33 at 10–11).  The court did not consider Dill's affidavit because the notary log and the notary's affidavit are enough to sustain the court's conclusion.

[3] Dill also moved this court to conclude that Loan Depot and Freddie Mac failed to cure the alleged violation of the Texas Constitution and breached their contract with Dill.  (Docket Entry No. 32-3 at 11, 13).  Because genuine issues of material fact preclude the court from concluding that LoanDepot and Freddie Mac violated the Texas Constitution, the court cannot conclude that LoanDepot and Freddie Mac failed to cure the alleged violation or breached their contract with Dill.

> or holder for the remaining term of the loan at no cost to the owner on the same
> terms, including interest, as the original extension of credit with any modifications
> necessary to comply with this section or on terms on which the owner and the lender
> or holder otherwise agree that comply with this section

TEX. CONST. art. XVI, § 50(a)(6)(Q)(x)(f). If Dill establishes that her loan was closed at an improper location, and that she gave Freddie Mac and LoanDepot notice, Freddie Mac and LoanDepot could have corrected that failure by offering to refund or credit Dill $1,000 and refinance her loan on the same terms, "with any modifications necessary to comply with" the Texas Constitution. *Id.* A refinanced loan would discharge the prior loan, and a new closing at the correct location would cure the parties closing at an improper location. With this modification, the refinanced loan would comply with the Texas Constitution.[4]

## IV.   Conclusion

LoanDepot's and Freddie Mac's motion for judgment on the pleadings, (Docket Entry No. 27), is denied. Dill's motion for summary judgment, (Docket Entry No. 32), is denied

SIGNED on December 17, 2020, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge

---

[4] LoanDepot and Freddie Mac also argue that Dill lacks standing. Dill alleges a breach of her contract with LoanDepot and Freddie Mac. As a party to that contract, she has standing to sue. *Priester v. Long Beach Mortg. Co.*, No. 4:16-CV-00449, 2016 WL 9504324, at *7 (E.D. Tex. Dec. 16, 2016), ("As a general rule, only parties to a contract and their successors-in-interest have standing to assert defects in the contract or seek its enforcement through breach claims."); *Barraza v. Bank of Am., N.A.*, No. 12-CV-35, 2012 WL 12886438, at *4 (W.D. Tex. Aug. 13, 2012) (the plaintiff "has standing to sue Defendants for breach of contract based on Defendants' alleged violations of its obligations under the Deed of Trust.").